UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **STATEWIDE BONDING, INC** | ) | |
| 4085 Chain Bridge Road, Suite 100 | ) | |
| Fairfax, VA, 22030; | ) | |
| | ) | |
| **BIG MARCO INSURANCE AND** | ) | |
| **BONDING SERVICES, LLC** | ) | |
| 1010 State Street | ) | |
| San Diego, CA 92101; | ) | |
| | ) | |
| **NEXUS SERVICES, INC.** | ) | |
| 113 Mill Place Parkway | ) | |
| Verona, VA 24482; | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| **MIKE DONOVAN** | ) | |
| 113 Mill Place Parkway | ) | |
| Verona, VA 24482 | ) | |
| | ) | |
|      Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| **U.S. DEPARTMENT OF** | ) | |
| **HOMELAND SECURITY ("DHS")** | ) | |
| 245 Murray Lane, SW | ) | |
| Washington, D.C. 20528; | ) | |
| | ) | |
| **U.S. IMMIGRATION AND CUSTOMS** | ) | |
| **ENFORCEMENT ("ICE")** | ) | |
| 500 12th St., SW | ) | |
| Washington, D.C. 20536; | ) | |
| | ) | |

**UNITED STATES OF AMERICA**                )
c/o Jefferson Beauregard Sessions III,         )
Attorney General of the United States          )
950 Pennsylvania Ave, NW                       )
Washington, D.C. 20530;                        )
                                               )
**KIRSTJEN NIELSEN**, in her individual        )
capacity as Secretary of U.S. Department       )
of Homeland Security ("DHS")                   )
245 Murray Lane, SW                            )
Washington, D.C. 20528;                        )
                                               )
**THOMAS HOMAN**, in his individual            )
capacity as Acting Director of U.S.            )
Immigration and Customs                        )
Enforcement ("ICE")                            )
500 12th St., SW                               )
Washington, D.C. 20536;                        )
                                               )
AND                                            )
                                               )
**JEFFERSON BEAUREGARD**                       )
**SESSIONS III**, in his individual capacity   )
as Attorney General of the United States       )
950 Pennsylvania Ave, NW                       )
Washington, D.C. 20530;                        )
                                               )   **JURY TRIAL DEMANDED**
              Defendants.                      )

## COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

Plaintiffs Big Marco, Statewide, and Mr. Donovan bring this action based

on the Defendants violating relevant provisions of the Administrative Procedure

Act ("APA"); violating due process rights protected by the Fifth Amendment of

the U.S. Constitution, and breaching the subject contractual agreement between

both Big Marco and Statewide, and DHS (amongst other Defendants). Plaintiffs

request the following relief, inter alia:

1. enjoin the Defendants from further demanding and collecting bond

   breaches based on a defective Notice to Appear, until the substantive

   legal issues in this case are resolved; and

2. grant monetary damages in an amount no less than five million dollars

   for demanding and collecting monies pursuant to an alleged bond

   breach, when the basis of the bond breach is an unlawful notice to

   appear and an unlawful demand to produce after the breach has

   occurred.

## INTRODUCTION

### 1.

The Supreme Court has spoken: A Notice to Appear ("NTA") is legally

defective when that same NTA fails to provide the subject immigrant with the

time, place, and date where he or she is to appear for immigration proceedings.

Pereira v. Sessions, 138 S. Ct. 2105, 2107 (2018). To the extent that these

Defendants disagree with the Supreme Court applying fundamental cannons of

statutory construction to the plain language to the subject NTAs—which are at

issue in this case—Plaintiffs remind these Defendants of their own admission:

"Federal law shall apply to the interpretation of the bond, and its terms shall be

strictly construed." Simply put, the cannons of statutory construction applied by the Supreme Court in <u>Pereira</u> are federal law, and that law led the Supreme Court to invalidate the subject NTA on, essentially, due process grounds.

2.

To the extent that the subject bond agreement should be strictly construed, federal law also requires the agreement to be strictly construed *against the drafter*, these Defendants.

3.

In this case, by violating both statutory law and constitutional law, the Defendants have commanded and collected over five million dollars from Plaintiffs—unlawfully. Defendants provide immigrants, who are in immigration proceedings, with an NTA, *once they are given bond*. The problem is that the NTA does not contain the date or time for appearances, and in many instances does not contain the place of appearance, either. With no specified date or time on their NTA, and in many cases, no specified place to appear, many of the immigrants naturally fail to appear. Therein lies the rub.

4.

Here, Plaintiffs Big Marco and Statewide have secured the bond for thousands of immigrants, while Plaintiff Donovan acts as a guarantor/indemnitor, of his company, Nexus Services, Inc, for each secured

bond at issue in this case. If an immigrant does not appear, that failure to appear
is considered a breach of bond, because the bond that secured the immigrant's
release – based on timely appearance in court – has been breached by failing to
appear.

5.

When a bond is breached, at that point, all Plaintiffs are subjected to a
steep financial penalty that includes either paying thirty-three to sixty-six percent
of the bond amount at issue, or paying the full bond amount at issue; Big Marco
and Statewide must pay whichever bond amount is demanded by Defendants,
and Mr. Donovan (on behalf of Nexus Services), as guarantor/indemnitor, must
fully indemnify Big Marco/Statewide.

6.

The problem is that Plaintiffs should not be commanded to pay for a bond
breach when Defendants, themselves, are the reason the subject immigrant failed
to appear; there is simply no doubt that these Defendants failed to follow non-
discretionary, statutory and constitutional requirements of providing the subject
immigrants with a specified date, time, and location for their respective
immigration hearings. The Supreme made this duty clear in <u>Pereira</u>, 138 S. Ct.
2105.

7.

Defendants will undoubtedly claim that it gives Plaintiffs an opportunity to cure the bonded immigrants' failure to appear, but in substance, legally speaking, Defendants are wrong. Foremost, Defendants never—prior to bond breach—provide Plaintiffs with any specified date or time in which Plaintiffs' immigrant client is supposed to appear. Only after the bond breach occurs do these Defendants send out a command to 'produce' the immigrant to a specified location, at a specified date and time. But even here, said command to produce the subject immigrant is woefully defective, because inter alia, the command is unreasonable.

8.

Without question, the law requires notice to be reasonable under the factual circumstances of a particular case, especially in cases regarding due process rights. With hundreds of thousands of dollars at stake—totaling in the millions—these Defendants many times provide a date, time and location to 'produce' an immigrant who has breached bond a mere 10 days prior to the specified date and time. And if these Plaintiffs cannot do that, then they must either pay the full bond price or, if they can produce the person within sixty days of the specified date, they must still pay a steep penalty, a penalty that has equated to millions of hard-earned dollars being paid to Defendants.

9.

In sum, hundreds of Plaintiffs' clients fail to appear because Defendants fail to (1) provide said person with a specified date, time, and location to appear in court, at the one time these Defendants actually can ensure that said immigrant receives a specified time and location, and to (2) provide Plaintiffs with a specified date, time, and location that their clients are to appear in court, prior to a bond breach. Then, only after the subject immigrant fails to appear, these Defendants expect Plaintiffs to find the person in less than 10 days (many times less than 48 hours), or suffer the penalty of paying the sum total of millions of dollars. Defendants conduct is unlawful, violating both the APA and Constitutional law. As such, Defendants have directly and proximately caused Plaintiffs to lose more than five million dollars.

**JURISDICTION**

10.

This case arises under the Fifth Amendment to the United States Constitution; the Administrative Procedures Act (APA); and the Declaratory Judgment Act, *inter alia*. The court has subject matter jurisdiction under, inter alia, 28 U.S.C. §§ 1331, 2202, 2201, and 5 U.S.C.A. § 702.

11.

Personal Jurisdiction is proper because Defendants transact business in this District and thus are subject to personal jurisdiction in this Court pursuant to, inter alia, Fed. R. Civ. P. 4.

**VENUE**

12.

Venue is proper under 28 U.S.C. § 1391 because at least one of the Defendants is subject to personal jurisdiction in this district with regards to this action.

**PARTIES**

13.

Plaintiff Statewide is a bonding company that issues criminal and immigration bonds throughout the United States.

14.

Plaintiff Big Marco is a bonding company that issues criminal and immigration bonds throughout the United States.

15.

Plaintiff Nexus Services, Inc. is a small, for-profit business that provides critical services to immigrants who languish in detention facilities, because they cannot afford to post immigration bonds. Nexus provides guarantees for

immigration bonds that are posted by Plaintiffs Big Marco and Statewide. Simply

stated, Nexus assumes tens of millions of dollars in risk to facilitate the release of

incarcerated immigrants. Nexus's mission is to give hope and help to those

without a voice in the immigration system. The Nexus program allows detained

immigrants to post their bonds and be reunited with their families without

having to pay the full amount of their bonds. The program allows immigrant

detainees to secure release without requiring traditional collateral, and

indemnifies sureties and/or bail agents from financial loss.

### 16.

Plaintiff Donovan is a business entrepreneur, who is CEO and President of

Nexus Services, Inc. ("Nexus").

### 17.

Defendant U.S. Department of Homeland Security ("DHS") has

responsibility for enforcing the immigration laws of the United States.

### 18.

Defendant U.S. Immigration and Customs Enforcement ("ICE") is the sub-

agency of DHS that is responsible for carrying out removal orders and

overseeing immigration detention.

19.

Pleading in the alternative, Defendant United States of America receives bond payments from Plaintiffs Big Marco and/or Statewide, pursuant to a bond breach, through the U.S. Department of Treasury.

20.

Defendant Kirstjen Nielsen is sued in her individual capacity as Secretary of U.S. Department of Homeland Security ("DHS").

21.

Defendant Thomas Homan is sued in his individual capacity as Acting Director of U.S. Immigration and Customs Enforcement ("ICE").

22.

Defendant Jefferson Beauregard Sessions III is sued in his individual capacity as Attorney General of the United States. At all times relevant to this Complaint, he had responsibility for the administration of the immigration laws pursuant to 8 U.S.C. § 1103, and oversaw the Executive Office of Immigration Review.

**RELEVANT FACTS**

**A. Nexus Services obligations and duties under the bond agreement**

23.

Before Nexus Services came along, immigrants in jail, who couldn't pay their full bond, were stuck. In fact, in order for an immigrant to be released from detention, said person had to pay one hundred percent of their determined bond. That changes under Nexus's innovative program, providing immigrants, who have not had their rights adjudicated, the opportunity to be released from imprisonment.

24.

Nexus's work in the area of immigration bonding has substantially increased court-appearance rates, as well as saved U.S. taxpayers hundreds of millions of dollars. Nexus's System is far greater, both constitutionally and practically speaking, than any efforts made by Defendants in this same area.

25.

The bond at issue is "posted as security for performance and fulfillment of the bonded immigrant's obligations to the government. An acceptable surety company or an entity or individual who deposits United States bonds, notes, or cash may execute the bond as surety." Defendants Big Marco and Statewide are

such surety companies and thus as the obligors, each "guarantees the performance of the conditions of the bond."

26.

The bond's guaranty is secured by the amount of the bond.

27.

Mr. Donovan's role is on behalf of Nexus Services because Mr. Donovan acts as the guarantor/indemnitor of the subject bonds.

28.

The surety in this case, Big Marco and Statewide, under the subject bond framework are obligors, they must pay a percentage or full amount of a assured bond if the 'immigrant ' fails to make *statutorily and lawfully adequate* court appearances; however, Nexus and arguably Mr. Donovan are on the hook because these two Plaintiffs must indemnify Big Marco and Statewide for each bond payment that Big Marco and Statewide are forced to pay because one of Nexus's clients breached bond, failed to make *statutorily and lawfully adequate* court appearances.

29.

Nexus has had to indemnify Big Marco and Statewide to the tune of *over* five million hard-earned dollars to either the Unites States or ICE—noting that DHS authorized the subject bonds and thus DHS is "the beneficiary of all bonds it authorizes."

**B.  The NTA**

30.

An NTA is a notice to appear that is given to the immigrant once the Plaintiffs have entered into a bond agreement with the subject person.

31.

This case only deals with persons/immigrants who are Nexus Program Participants, who have entered into bond agreements with either Big Marco or Statewide, thereby by making Plaintiff Donovan an indemnitor to the subject agreements on behalf of Nexus Services, if monies have to be paid to the Defendants pursuant to an alleged breach of bond.

32.

A breach of bond occurs when an immigrant—in this case a Nexus Program Participant—fails to make a *statutorily and lawfully adequate* court appearance.

33.

The starting point for whether an immigrant fails to make a *statutorily and lawful* court appearance is the Notice of Appearance, NTA.

34.

The NTA is required to state the time, date, and place with respect to the immigrant's appearance in court.

35.

The NTAs at issue in this case are issued pursuant to 8 U.S.C.A. § 1229, which requires the NTA given to the subject immigrant, prior to, and at the time of, their release on bond to contain a specific time and place with respect to making a court appearance.

36.

The NTA is given to the immigrant by Defendants upon determination that the immigrant will be released on bond, and prior to said release.

37.

The NTAs at issue in this case do not contain a time and date, and the majority do not contain a place, with respect to where the immigrant client is supposed to appear in court.

38.

At the time the immigrant is given his or her NTA by Defendants, a copy of that NTA is not sent to the obligor, in this case Big Marco and Statewide, nor is a copy of the subject NTA sent to Nexus Services, who indemnifies.

39.

The one time the Defendants can ensure that a subject immigrant being released on bond receives an NTA with a specified time and location to appear in court is prior to, or at the time of, release on bond—but Defendants have engaged in a custom and practice of failing to ensure a time and place at this significant moment.

40.

Defendants admit that "Federal law shall apply to the interpretation of the bond, and its terms shall be strictly construed."

41.

The subject NTA is an integral part of the subject bond agreements in this case because the NTA is supposed to place the subject immigrant on notice of exactly when and where to appear for court—and if the immigrant fails to appear, these Defendants sought millions of dollars from Plaintiffs as a direct result of said failure to appear.

42.

Federal statutory and case law requires the subject NTA given to the subject immigrant prior to, or at the time of, being released on bond to contain a specific time, date, and place with respect to court appearances of the subject immigrants in this case. See <u>Pereira v. Sessions</u>, 138 S. Ct. 2105, 2107 (2018); see 8 U.S.C.A. § 1229.

43.

As a matter of fact, case law that governs the bond agreement at issue in this case is strictly construed against the drafter of the agreement; the drafter of the bond agreements at issue in this case is Defendants.

44.

Many times, after receiving the initial NTA at the time of posting bond and being released, the subject immigrant moves to different locations throughout the United States.

45.

After receiving the initial NTA prior to posting bond and being released, on occasion, the subject immigrant, who is a Program Participant, engages in conduct that makes it substantially harder for Nexus to find said Program Participant.

46.

Once the immigrant client fails to appear, a breach of bond occurs and thus each Plaintiff is subject to significant monetary penalties.

**C. What happens after the initial breach for purposes of this case**

47.

After the initial failure to appear (breach of bond), mindful that no Plaintiffs receive a copy of the subject NTA—that doesn't contain a date, time/location—prior to the initial breach, Defendant DHS sends Plaintiffs Big Marco and Statewide (Obligors under the bond agreement) a 'demand to produce the alien.'

48.

The Notice to Produce contains a time, date and location to produce the alien, and this notice represents the very first time the Plaintiffs have received any documentation from the Defendants regarding both a specific time and location with respect to the subject immigrants' mandatory court appearance.

49.

Relevantly, regarding the subject immigrants at issue in this case, on occasions, after failing to receive an NTA upon being released from detention on bond, that contains a specific time and location to appear, the same immigrants never receive subsequent notice of a specific time/date, and location to appear.

50.

Many times, Plaintiffs receive the notice to produce within 10 days of the specific time and location to produce the subject immigrant.

51.

Giving Plaintiffs less than 10 days to track down a missing person with the vast territorial region of the United States is absolutely unreasonable, and subjecting Plaintiffs to significant monetary penalty if the person is not produced within that unreasonable time frame is unlawful.

52.

There is no evidence that each immigrant received supplemental notice, after failing to receive the subject NTA without a time and place for compliance, unless said immigrant appears based on the supplemental notice.

53.

Plaintiffs only receive a copy of the original NTA, which does not contain a time and date, and many times no place, regarding compliance.

54.

Plaintiffs do not receive a copy of any supplemental notice sent by Defendants to the subject bonded immigrant, and if they do receive of copy of said supplemental notice, Plaintiffs receive it after the subject bonded immigrant has breached his or her bond by failing to appear.

**D. Damages**

55.

Once a bond is breached the Plaintiffs are liable for the full amount of the bond.

56.

Plaintiffs have paid over five million dollars to Defendants as a result of alleged bond breaches.

57.

If Plaintiffs produce a subject immigrant after the specified date in a notice to produce, the Plaintiffs must still pay a specified percentage, of the original bond, to the Defendants.

58.

Plaintiffs have produced a subject immigrant after the date specified in the subject notice to produce and thus have had to pay over five million dollars in penalty fees to the Defendants.

59.

Making Plaintiffs pay any money to Defendants based on unreasonable notice within the subject notices to produce is unlawful because Plaintiffs simply do not, and did not, have enough time to produce the subject immigrant who failed to appear based on an NTA that did not contain a specified time and place.

## CAUSES OF ACTION

### COUNT I
### Claim for Declaratory Relief
### for violation of the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(C), by disregarding the requirements of, *inter alia*, 8 U.S.C. § 1229 and for violation of Procedural and Substantive Due Process Rights protected by Due Process Clause 5th Amendment of the U.S. Constitution
*(Against Nielsen, Homan and Sessions, in their individual capacities and all other Defendants)*

60.

Plaintiffs hereby incorporate the preceding factual paragraphs, and any other paragraph this Court deems relevant, as repeated and realleged as though fully set forth herein to support this Count.

61.

Based on all the incorporated facts, the final agency action of (1) issuing an NTA that violated federal law by not having a specific time, date, and place regarding immigrant court appearance and (2) commanding and collecting money based on both the unlawful NTA and unreasonable (unconstitutional) notice regarding the subject notice to produce was unlawful, in excess of authority, and an abuse of authority, inter alia, under the APA.

**COUNT II**
**Claim for Injunctive Relief**
**for violation of the Administrative Procedures Act ("APA"), 5 U.S.C. §**
**706(2)(C), as well as violation of Procedural and Substantive Due Process**
**Rights protected by Due Process Clause 5th Amendment of the U.S.**
**Constitution**
*(Against Nielsen, Homan and Sessions, in their individual and all other Defendants)*

62.

Plaintiffs hereby incorporate the preceding factual paragraphs, and any

other paragraph this Court deems relevant, as repeated and realleged as though

fully set forth herein to support this Count.

63.

Based on all the facts to support this Count, this Court should enjoin the

Defendants from collecting any future monies from alleged bond breaches, until

the substantive legal issues are resolved. Plaintiffs, based on the incorporated

facts to support this Count, have a high likelihood of success on the merits, and

the injunctive relief sought serves the public interest. The balance of equities also

weighs in Plaintiffs' favor, and as far as irreparable harm, more than just money

damages are at stake, Plaintiffs community reputation and ability to contract

with relevant businesses has suffered, significantly.

**COUNT III**
**Bivens Claim for violating due process rights**
**under the U.S. Constitution**
*(Against Nielsen, Homan, and Sessions in their individual capacity)*

64.

Plaintiffs hereby incorporate the preceding factual paragraphs, and any other paragraph this Court deems relevant, as repeated and realleged as though fully set forth herein to support this Count.

65.

Based on all the facts to support this Count, the named Defendants in this Count have caused Plaintiffs to suffer monetary damages in excess of five million dollars as a direct result of violating due process rights at issue in this case by first, using an NTA with no specified time, date, and location for compliance, and by second, basing the collection of millions of dollars based on a failure to appear when—in fact—the subject person could not appear because he or she had no specified time, date or location regarding his or her appearance. Consequently, Plaintiffs are entitled to recoup monetary damages as a result of Defendants' unlawful conduct.

## COUNT IV
## Breach of Contract
*(Against Nielsen in her individual capacity and DHS)*

66.

Plaintiffs hereby incorporate the preceding factual paragraphs, and any other paragraph this Court deems relevant, as repeated and realleged as though fully set forth herein to support this Count.

67.

Based on the incorporated facts to support this Count, the named Defendants in this Count have breached the contractual agreement with Plaintiffs Big Marco and Statewide. Consideration was given by Big Marco and Statewide in the form of a bond and covenant to pay upon breach. Plaintiffs were willing and enable to perform but Defendants created a situation for Big Marco and Statewide that made it impossible for them not to breach. Under the contract, non-performance is the failure to produce the Principal upon demand by DHS. But Big Marco and Statewide cannot produce a Principal ("alien") when that Principal was never given a time and date, and many times place, regarding his or her court appearance. Moreover, these named Defendants failed to provide Big Marco and Statewide with copies of supplemental notices, thereby exacerbating these Plaintiffs' ability to perform under the contract. In fact,

Plaintiffs Big Marco and Statewide's obligations are directly tied to the first NTA,

given the fact that they never receive any supplemental NTA:

> BOND CONDITIONED UPON THE DELIVERY OF AN ALIEN. In consideration of the granting of the application of the above alien for release from custody under a warrant of arrest issued by the Attorney General charging that he/she is unlawfully in the United States, provided there is furnished a suitable bond as authorized by Section 236 and/or Section 241 of the Immigration and Nationality Act, the obligor hereby furnishes such bond with the following conditions if: (1) the alien is released from custody and **if the obligor shall cause the alien to be produced** or to produce himself/herself to an immigration officer or an immigration judge of the United States, **as specified in the appearance notice**, upon each and every written request until exclusion/deportation/removal proceedings in his/her case are finally terminated…."

Again, there is no sufficient specificity in the original NTA and supplemental

NTAs are not provided to Big Marco or Statewide, prior to a bond breach by the

Principal. Once a Principal fails to appear, these named Defendants blame Big

Marco and Statewide for not producing a Principal, despite the fact that pursuant

to the only verifiable time that the government could have *ensured* sufficient

notice, because the government had the Principal in its physical possession prior

to release on bond—the government (these Defendants) failed to do so, electing

tot provide an NTA that fails to meet statutory and due process requirement

regarding time, place, and location with respect to mandatory court appearances.

**COUNT V**
**Breach of duty of good faith and dealing under the subject bond agreements (contracts)**
*(Against Nielsen in her individual capacity and DHS)*

68.

Plaintiffs hereby incorporates the preceding factual paragraphs, and any other paragraph this Court deems relevant, as repeated and realleged as though fully set forth herein to support this Count.

69.

Based on the facts incorporated to support this Count, especially those discussed in the proceeding count for breach of contract, the named Defendants violated their duty of good faith and fair dealing, to include seeking thousands upon thousands of dollars based on a known defective NTA, mindful again of the fact that the only—with emphasis on the term only—time that the government could ensure that the subject NTA met statutory requirements of specifying a time and place for compliance, these Defendants failed to do so, intentionally.

## COUNT VI
## Attorney's Fees

Based on the foregoing, Plaintiffs are entitled to reasonable attorney's fees under all applicable laws, including the Equal Access to Justice Act, 28 U.S.C. § 2412.

## PRAYER FOR RELIEF

Plaintiffs request that the Court enter a judgment against Defendants and award the following relief:

A.     Order Defendants be enjoined from commanding and collecting money from Plaintiffs pursuant to a bond breach that was based on a defective NTA, until the substantive legal issues in this Complaint are resolved;

B.     Enter judgment and declaratory judgment in favor of Plaintiffs;

C.     *Award special damages*, based on Plaintiffs proving an exact amount through relevant documentation such as the bond and breach of bond paperwork at issue in this case, against Defendants in an amount no less than five million dollars;

D.     Award monetary damages to include compensatory and punitive damages under applicable law in an amount no less than five million dollars;

E.     Award costs and attorneys' fees to Plaintiff; and

F.     Order all other relief that is just and proper.

Respectfully submitted this 11th day of September 2018,

/s/John M. Shoreman
John M. Shoreman (#407626)

**MCFADDEN & SHOREMAN, LLC**
1050 Connecticut Avenue, NW
Washington, DC 20036
202-772-3188/202-204-8610 FAX
jmshoreman@verizon.net
*Counsel for Plaintiffs*