## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **STATEWIDE BONDING, INC.,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs.,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 1:18-cv-02115 (JEB)** |
| | ) | |
| **U.S. DEPARTMENT OF HOMELAND,** | ) | |
| **SECURITY (DHS), et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNITED STATES' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND MOTION FOR A MORE DEFINITE STATEMENT

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the United States of America, on behalf of Defendants the Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), the Acting Attorney General, Matthew G. Whitaker, the Secretary of DHS, Kirstjen Nielsen, the Deputy Director and Senior Official Performing the Duties of Director of ICE, Ronald D. Vitiello, moves to dismiss portions of the First Amended Complaint (ECF No. 8) filed by Plaintiffs Statewide Bonding, Inc. (Statewide), Big Marco Insurance and Bonding Services, LLC (Big Marco), Nexus Services, Inc. (Nexus), and Mike Donovan for lack of subject matter jurisdiction. Defendants also move for a more definite statement under Federal Rule of Civil Procedure 12(e) because Plaintiffs have failed in their amended complaint to identify any particular bond breach determination that they are challenging. Without such an identification, the Defendants cannot ascertain the current status of the bond (whether it has, in fact, been breached or whether the breach determination is undergoing review as part of the administrative appeals process) and designate the administrative record for review of a final breach determination.

Plaintiffs' amended complaint seeks to enjoin a Federal agency from performing a function essential to its mission. Without including a specific example of a bond breach that is legally unenforceable in their amended complaint, Plaintiffs ask this Court to enjoin ICE from issuing any determination that an immigration bond has been breached based on what they characterize as a defective Notice to Appear (NTA) or "Notice to Produce Alien" until the substantive legal issues in their amended complaint are resolved. Pls.' Am. Complt. Prayer for Relief ¶ A, ECF No. 8 at 20. Plaintiffs are not entitled to such far-reaching relief because they have failed to satisfy basic jurisdictional and pleading requirements to enable this Court to consider their claims.

## ARGUMENT

## I.      THIS COURT LACKS JURISDICTION OVER PLAINTIFFS' CLAIM BASED ON ALLEGEDLY DEFECTIVE NOTICES TO APPEAR.

Count I of Plaintiffs' amended complaint seeks declaratory relief for alleged violations of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(C), as well as procedural and substantive due process rights protected by the Fifth Amendment's Due Process Clause, based upon Defendants' purported issuance of defective NTAs served on aliens to commence removal proceedings in immigration court. Pls.' Am. Complt. ¶¶ 57-58, ECF No. 8 at 18. Count II of Plaintiffs' amended complaint seeks injunctive relief for the same alleged violations. *Id.* ¶¶ 59-60, ECF No. 8 at 19. Because Plaintiffs lack standing to challenge allegedly defective NTAs, this Court should dismiss those portions of Plaintiffs' amended complaint raising that challenge.

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action, or any portion thereof, where there is "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1); *see also Zaidan v. Trump*, 317 F. Supp. 3d 8, 16 (D.D.C. 2018). A motion to dismiss for lack of subject matter jurisdiction presents a threshold question involving the court's authority to act, and courts have an independent obligation to determine whether subject matter jurisdiction exists, even

when the issue is not raised by a party. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). The burden of demonstrating subject matter jurisdiction lies with the party asserting it. *Khadr v. United States,* 529 F.3d 1112, 1115 (D.C. Cir. 2008). A court may consider materials outside the pleadings to determine whether subject matter jurisdiction exists. *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005). In such circumstances, the consideration of materials outside the pleadings does not convert a motion to dismiss into a motion for summary judgment. *Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 21 (D.D.C. 2003).

To properly invoke a federal court's jurisdiction, a plaintiff must have standing to present a claim. *Ctr. for Responsible Sci. v. Gottlieb*, 311 F. Supp. 3d 5, 8 (D.D.C. 2018). The "irreducible constitutional minimum of standing" consists of three elements: the plaintiff must have suffered or been threatened with a particularized injury in fact, the injury is fairly traceable to the challenged action of the defendant, and the injury is likely to be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Questions of standing involve both constitutional and prudential limitations on a federal court's exercise of jurisdiction. *Kowalski v. Tesmer*, 543 U.S. 125, 128 (2004). The three-part standard for standing set forth in *Lujan* focuses on the constitutional minimum of standing, which is required by Article III's case-or-controversy requirement. The question of whether a party has standing to raise the rights of others is typically considered to fall within the prudential limitations on a court's exercise of jurisdiction and is analyzed under the principles of third-party standing. *Id.* at 129-30.

Plaintiffs cannot establish the required injury in fact on their claim that the NTAs are defective to meet the constitutional minimum for standing. The issuance of an NTA to commence a removal proceeding against an alien has no bearing on ICE's bond breach determination.

Immigration proceedings commence when a "charging document"[1] is filed with the immigration court by DHS.  8 C.F.R. § 1003.14(a).  "Once a notice to appear is filed with the Immigration Court . . . jurisdiction over the individual's immigration case vests with the [Immigration Judge (IJ)], and it is the IJ's duty to adjudicate the case." *Gonzalez-Caraveo v. Sessions*, 882 F.3d 885, 890 (9th Cir. 2018).

While an alien in removal proceedings has standing to challenge defects in an NTA, *see, e.g., Kohli v. Gonzales*, 473 F.3d 1061, 1065-70 (9th Cir. 2007), neither an immigration bond obligor nor a bond service provider can show injury to its interests from an NTA that does not set forth the date and time of the initial hearing before the immigration court.  ICE does not breach an immigration bond solely because an alien fails to appear for a hearing in immigration court.  Instead, before an immigration bond conditioned upon the delivery of an alien is breached, ICE issues a demand notice on Form I-340 ("Notice to Obligor to Deliver Alien").  ICE sends the demand notice by certified mail to the bond obligor and verifies that it has been delivered to the obligor.  ICE breaches the bond when the alien fails to report to the ICE Office in response to the demand notice.  Thus, the fact that an NTA does not include a date or time for an immigration court hearing has no bearing on the breach of the immigration bond.  Gellert Decl., ¶¶ 6, 8 & 10, ECF No. 7-1 at 3-4.  For this reason, Plaintiffs cannot establish injury in fact when an NTA does not include the date and time of the first immigration court hearing.  Because they cannot show that they have standing to raise their defective NTA claim, this claim should be dismissed.

---

[1] The charging document, titled a "notice to appear," commences immigration proceedings initiated on or after the April 1, 1997 effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), while a charging document called an "order to show cause" commenced proceedings prior to that date. *Rojas-Reyes v. INS*, 235 F.3d 115, 120 (2d Cir. 2000).

Even if the Plaintiffs could show the constitutionally-required element of injury in fact, they cannot show that they meet the requirements to bring a legal challenge on behalf of a third party.  Courts generally require that a party "must assert his own legal rights and interests, and cannot rest his claim to relief on legal rights or interest of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  This prudential limitation on the exercise of federal jurisdiction serves two purposes:  1) it helps to prevent "the adjudication of rights which those not before the Court may not wish to assert"; and 2) it helps to ensure "that the most effective advocate of the rights at issue is present to champion them." *Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 15 (D.D.C. 2010) (quoting *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 80 (1978)).

The Supreme Court's most recent, thorough discussion of the principles underlying third-party standing were set forth in *Kowalski v. Tesmer*, 543 U.S. 125 (2004), where the Court dismissed a suit brought under 42 U.S.C. § 1983 by criminal attorneys challenging the state court's practice of denying appellate counsel to indigent defendants convicted after a guilty plea.  In *Kowalski*, the Court set forth a two-prong test that a party seeking to bring claims on behalf of third parties must meet.  First, the plaintiff must show that it has a "close relationship" with the person who possesses the legal right.  Second, the plaintiffs must also establish that there is a "hindrance" interfering with the third-party's ability to protect his or her own interests. *Id.* at 130. The Court held that the attorneys lacked standing to challenge the state's rule because the case did not involve the attorneys' representation of known clients, and thus the attorneys had no relationship with their "hypothetical" clients. *Id.* at 130-31.  The Court further found that no hindrance was present that would interfere with the indigent defendants bringing their own constitutional challenge to the state's scheme. *Id.* at 132.  Because the plaintiff attorneys could

not satisfy the two-prong test, the Court held that they lacked standing to challenge the state's practice.

Where an asset management company that had purchased debt securities issued by a communications company that violated federal securities laws brought suit on behalf of its clients against firms that allegedly facilitated misleading disclosures in the communications company's financial statements, the court held that the asset management company lacked standing to raise claims on behalf of its clients. *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 110 (2d Cir. 2008). The court rejected the asset management company's assertion of third-party standing to assert its clients' interests because the "investment advisor-client relationship" was not the type of "close relationship" required under *Kowalski*. The court also noted that there was no hindrance to the clients' ability to protect their own interests as the clients could file suit or participate as part of a class action suits to pursue similar claims. *Id.* Thus, the court held that the asset management company did not qualify "for a prudential exception to the 'injury-in-fact' requirement." *Id.*

Similarly, when the American Immigration Lawyers Association (AILA) attempted to assert the due process and equal protection rights of aliens when challenging the expedited removal procedures under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), 8 U.S.C. § 1225(b), the court held that AILA lacked standing. *Am. Immigration Lawyers Ass'n v. Reno*, 199 F.3d 1352, 1364 (D.C. Cir. 2000). The court reasoned that it would be improper to expand jurisdiction though the "back door of third party standing" when Congress by statute only allowed aliens who were actually subjected to the summary procedures set forth in § 1225(b) to challenge them in court and when Congress barred class actions in those situations. *Id.* at 348. The court concluded that: "One cannot come away from reading this [statutory] section

without having the distinct impression that Congress meant to allow litigation challenging the new system by, and only by, aliens against whom the new procedures had been applied." *Id.* at 348-49.

In a similar vein, a court held that a bail bond provider lacked standing to challenge a state statute that authorized alternatives to detention, such as home detention and electronic monitoring, instead of requiring monetary bail. *Holland v. Rosen*, 895 F.3d 272, 291 (3d Cir. 2018), *cert. denied*, 2018 WL 4681344 (Oct. 29, 2018). The court found that the bail bond provider did not have a sufficiently close relationship with potential bail bond customers to assert their interests. *Id.* at 287-88. In addition, the court noted that the bail bond provider failed to establish that the potential bail bond customers faced obstacles to pursuing their own claims. *Id.* at 288. Thus, the court upheld the district court's determination that the bail bond provider lacked standing.

The Plaintiffs seek to enjoin ICE from issuing bond breach determinations when the NTAs initiating immigration proceedings fail to specify the date and time of the immigration court hearings. Plaintiffs' legal assertion that the NTAs are defective outside the specific context raised in *Pereira v. Sessions*, 138 S. Ct. 2015 (2018) (when an alien is seeking cancellation of removal and the "stop-time" rule is at issue) has been debunked by the Board of Immigration Appeals, which held that an NTA is legally sufficient in other contexts as long as a notice of hearing specifying the date and time of the Immigration Court hearing is later sent to the alien. *Matter of Bermudez-Cota*, 27 I. & N. Dec. 441, 447 (BIA 2018), *appeal docketed*, No. 18-72573 (9th Cir. Sept. 20, 2018). Assuming, however, that all NTAs issued to aliens who were released on bonds that were later breached are defective, Plaintiffs are not the proper parties to challenge the legal sufficiency of the NTA. Because they lack standing to raise this issue, this Court lacks jurisdiction over this claim.

The Plaintiffs lack third party standing to challenge the legal sufficiency of the NTAs because they cannot show that either of the two prongs required by *Kowalski* has been satisfied. First, Plaintiffs cannot show a sufficiently close relationship with the alien in immigration proceedings to assert his or her interest in arguing that the NTA is legally defective.  Although Plaintiffs may eventually post a bond on an alien's behalf to release him or her from custody, the Plaintiffs' interaction may be primarily with the alien's family members or friends -- the Plaintiffs may have few direct communications with the alien.  Just as the bail bond providers in *Holland v. Rosen* were found not to have a sufficiently close relationship with potential bail bond customers to assert their interests, 895 F.3d at 287-88, the Plaintiffs here lack the required close relationship with the aliens for whom they post bonds to assert the aliens' interests in challenging the NTA.

Second, Plaintiffs have offered no evidence to establish, nor can they establish, that aliens face obstacles to challenging the legal sufficiency of their NTAs on their own.  Given that aliens served with an NTA are in removal proceedings, they have a forum in which to raise any challenge to the legal sufficiency of an NTA.  Strategies and suggested means for raising claims based on allegedly defective NTAs in removal proceedings are available on the Internet.  *See, e.g.,* American Immigration Council & Catholic Legal Immigration Network, Inc., *Practice Advisory:  Strategies and Considerations in the Wake of Pereira v. Sessions* (July 20, 2018), https://www.americanimmigrationcouncil.org/sites/default/files/practice_advisory/final_pereira_advisory_-_7.20.2018_-_aic_clinic.pdf.  The Catholic Legal Immigration Network, Inc. reported that, after *Pereira*, "many immigration practitioners have moved to terminate removal proceedings, . . . arguing that if the putative NTA was defective, the immigration court never acquired jurisdiction over the case."  Victoria Neilson, *BIA tries to restrict Supreme Court holding of Pereira* (Sept. 26, 2018),  https://cliniclegal.org/resources/bia-tries-restrict-supreme-court-

holding-pereira.    Because numerous aliens have already challenged NTAs as being legally

defective, the evidence shows that nothing is hindering immigrants from contesting the validity of

the NTA in immigration court proceedings.   As a result, the Plaintiffs are unable to show the

second prong required for third-party standing.

## II.    PLAINTIFFS NEXUS AND DONOVAN LACK STANDING BECAUSE THEY ARE NOT PARTIES TO THE IMMIGRATION BOND CONTRACT.

Every plaintiff in federal court bears the burden of establishing standing to bring the claims

in the complaint.   *In re Sci. Applications Int'l Corp. Backup Tape Data Theft Litig.*, 45 F. Supp.

3d 14, 23 (D.D.C. 2014).   In cases involving multiple plaintiffs, only those with standing to sue

can pursue their claims.   *Id.* at 34.   Because Plaintiffs Nexus and Donovan are not parties to the

immigration bond contract, they lack standing to challenge ICE's bond breach determinations.   As

a result, this Court should dismiss them from the case.

It is a long-established principle that an entity or person who is not a party to a contract or

a third-party beneficiary of a contract lacks standing either to seek enforcement of the contract or

to bring a breach of contract claim.   *Lawson v. Life of the South Ins. Co.*, 648 F.3d 1166, 1167

(11th Cir. 2011) ("A rule of contract law is that one who is not a party to an agreement cannot

enforce its terms against one who is a party."); *Copiers Typewriters Calculators, Inc. v. Toshiba

Corp.*, 576 F. Supp. 312, 322 (D. Md. 1983) ("it is hornbook law that only the parties to a contract

can enforce it and that they may enforce it against only the parties to the contract" absent some

recognized exception).   "[O]nly a party to a contract or an intended third-party beneficiary may

sue to enforce the terms of a contract or obtain an appropriate remedy for breach.   The fact that a

third party may incidentally benefit under the contract does not confer on him the right to sue;

instead, the parties must have intended to benefit the third party.   This distinguishes intended

beneficiaries to a contract whose rights are judicially enforceable from incidental beneficiaries

whose rights are not judicially enforceable." *GECCMC 2005-C1 Plummer St. Office Ltd. P'ship v. JPMorgan Chase Bank, Nat'l Ass'n*, 671 F.3d 1027, 1033 (9th Cir. 2012) (citations omitted).

"Federal law governs the interpretation of contracts entered into pursuant to federal law and to which the government is a party." *Smith v. Cent. Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1034 (9th Cir. 2005). When the government contract specifically provides that federal law governs its interpretation, federal common law should be applied. *GECCMC 2005-C1 Plummer St. Office Ltd. P'ship*, 671 F.3d at 1033. Here, the immigration bond contract states that "Federal law shall apply to the interpretation of the bond." Gellert Decl., Ex. A at 2, ECF No. 7-1 at 7.

Under the federal common law, a purported third-party beneficiary must show that the contract reflects the "express or implied intention of the parties to the contract to benefit the third party." *GECCMC 2005-C1 Plummer St. Office Ltd. P'ship*, 671 F.3d at 1033. Parties that benefit from a government contract are generally presumed to be incidental beneficiaries, rather than intended beneficiaries, and thus may not enforce the contract absent a clear intent to the contrary. *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 932-33 (11th Cir. 2013); *Restatement (Second) of Contracts* § 313(2) & comment a (1981). "[O]nly in rare circumstances will courts deem individual members of the public to be intended beneficiaries empowered to enforce those [government] contracts in court." *Edwards v. Aurora Loan Servs., LLC*, 791 F. Supp. 2d 144, 151 (D.D.C. 2011). To overcome this presumption, the contract must "reflect the express or implied intention of the parties to benefit the third-party." *State of Mont. v. United States*, 124 F.3d 1269, 1273 (Fed. Cir. 1997). A third party must show that the parties to the government contract clearly intended that the third party be permitted to enforce the contract. *Edwards*, 791 F. Supp. 2d at 151.

An immigration delivery bond "is a contract, akin to a bail bond" between the surety company, acting through its bond agent, and DHS.  *Safety Nat'l Cas. Corp. v. DHS*, 711 F. Supp. 2d 697, 701 (S.D. Tex. 2008); *see also United States v. Minn. Trust Co.,* 59 F.3d 87, 90 (8th Cir. 1995) (an immigration delivery bond is a contract involving the Immigration and Naturalization Service (INS) (now ICE), the bonding agent, and the surety company); *United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, 728 F. Supp. 2d 1077, 1087-89 (N.D. Cal. 2010) (finding that the "face of the immigration bond document itself demonstrates that the parties intended to form a contract" and the government has treated immigration bonds as contracts in practice).

Plaintiffs Nexus and its principal Mr. Donovan are not parties to the immigration bond contracts.  The bond instructions identify the entities that are parties to the bond:  the surety company and its agent are co-obligors on the bond with joint and several liability for any breach of the bond; the alien is the principal; and DHS is the beneficiary of the bond.  Gellert Decl., Ex. A, at 1, ECF No. 7-1 at 6.  This reading of the bond contract is supported by *Matter of Allied Fidelity Ins. Co.*, where the Board of Immigration Appeals specifically noted that "[t]here is . . . no contract between the Service [the former INS now ICE] and one who posts collateral with the bonding agent to secure the delivery bond, or between the Service and the named alien, or his attorney."  *Matter of Allied Fid. Ins. Co.*, 19 I. & N. Dec. 124, 125 (BIA 1984).

Nexus is neither a surety company nor a bond agent.  Instead, it "partners" with surety companies and their bond agents, Schneider Aff. ¶ 6, ECF No. 4-1 at 2, and it provides "guarantees for immigration bonds" posted by bond agents Big Marco and Statewide.  Am. Compl. ¶ 16, ECF No. 8 at 8.  Mr. Donovan is CEO and President of Nexus, and he acts as the guarantor/indemnitor of the bonds. Am. Compl. ¶¶ 17& 28, ECF No. 8 at 8 &11.  On the bond forms where Mr. Donovan's name appears, he is listed as the "person who executed a written instrument with the

surety company requesting it to post bond." Monette Decl., Ex. A, at 11, ECF No. 7-2 at 16.  As recognized in *Matter of Allied Fid. Ins. Co.,* no contractual relationship exists between ICE and the person who provides a guarantee or other collateral to the bonding agent to secure the immigration bond.  19 I. & N. Dec. at 125.   Because neither Nexus nor Mr. Donovan is listed as the obligor or the co-obligor on the bond, neither is a party to the bond contract.

Here, the bond contract instructions clearly state that DHS is the beneficiary of the bond agreement.  The surety company and its bond agent are co-obligors with joint and several liability for a bond breach, and the alien is the principal.  Gellert Decl., Ex. A, at 1, ECF No. 7-1 at 6. Nexus is not mentioned on the bond form, and Mr. Donovan is listed as the "person who executed a written instrument with the surety company requesting it to post bond."  Monette Decl., Ex. A, at 11, ECF No. 7-2 at 16.

While Nexus apparently has entered into contractual arrangements with Big Marco and Statewide to guarantee amounts due on breached bonds, neither Nexus nor Mr. Donovan has entered into a contractual relationship with the DHS or ICE.  Other than listing the person or entity that contracted with the surety company or its agent to arrange to have a bond posted, the bond contract does not contain any terms or conditions that pertain to that person who arranged to have the bond posted.  The plain language of the bond agreement makes it clear that DHS is the beneficiary of the duties owed to it by the co-obligors, and the United States has a claim for the face amount of the bond when the bond is declared breached.  No language in the bond form shows any intention, either express or implied, to benefit the person who arranged to have the bond posted on behalf of the alien or to allow that person to enforce the terms of the bond on behalf of the co-obligors.  For this reason, neither Nexus nor Mr. Donovan is a third-party beneficiary to the bond

contract, and thus neither of these Plaintiffs has standing to seek enforcement of the contract or to bring a breach of contract claim.

## III.   UNDER RULE 12(e), PLAINTIFFS SHOULD BE REQUIRED TO IDENTIFY SPECIFIC BOND BREACH DETERMINATIONS THAT THEY ARE CHALLENGING.

In their amended complaint, Plaintiffs fail to identify any specific bond breach determinations that they are challenging.  Instead, they broadly describe two categories of breach determinations that they claim are unlawful:  1) those based upon a defective NTA; and 2) those based on a demand notice received by a bond obligor less than ten days before the report date listed on the demand notice.  *See* Pls.' Am. Complt. ¶ 10, ECF No. 8, at 6.  To allow the Defendants to respond to their claims, Plaintiffs need to identify the specific bond breach determinations that they are challenging.  Without such an identification, the Defendants cannot verify that the bonds actually were breached and are not undergoing review under the administrative appeals process.[2]

Federal Rule of Civil Procedure 12(e) provides that a party may ask for a more definite statement of a pleading that is so vague or ambiguous that the party cannot reasonably prepare a response.  Fed. R. Civ. P. 12(e).  "Motions for a more definite statement are appropriate where the complaint lacks the required specificity to enable the defendant to understand the precise nature of the claims against it."  *Cheeks v. Fort Myer Constr. Corp.*, 71 F. Supp. 3d 163, 168 (D.D.C. 2014).  Motions for more definite statements are not to serve as substitutes for discovery, and courts will generally deny such motions where the information sought may be obtained through discovery.

---

[2] While the Plaintiffs did not include any information about specific bond breach determinations that they seek to challenge in their amended complaint, as would have been proper, they did file hundreds of pages of documents under seal as exhibits to their Motion for Declaratory Relief and Permanent Injunction.  ECF No. 10.  The Defendants' review of these documents shows final breach determinations have not been issued for many of the bonds for which documents were provided and thus judicial review of these bonds would not be available.

*Levick v. Kiser*, 206 F. Supp. 3d 337, 347 (D.D.C. 2016).  Courts have granted relief under Rule 12(e) when doing so can remedy the complaint's indefiniteness and thereby avoid a less drastic result than dismissal.  *Dorsey v. Am. Express Co.*, 499 F. Supp. 2d 1, 3 (D.D.C. 2007); *Hilska v. Jones*, 217 F.R.D. 16, 25 (D.D.C. 2003).

To the extent that certain of the Plaintiffs' APA claims against the Defendants survive this motion to dismiss, Plaintiffs should be required to provide a more definite statement identifying particular bond breach determinations that they seek to challenge.  This additional detail is required in an APA case for several reasons.  First, the Defendants must have the opportunity to review the specific claims to ensure that they are final agency actions subject to judicial review under the APA and to ensure that this Court has jurisdiction over the claims.  For example, if the breach determination is undergoing administrative review, it is not a final agency action subject to judicial review.  Second, the Defendants must know what breach determination is being challenged to compile an administrative record.  In an APA case involving an informal adjudication, such as a bond breach determination, the court must review the administrative record assembled by the agency to determine whether its decision was based on a consideration of all the evidence before it.  *Butte Cty., Cal. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010).  Finally, discovery typically is not available in an APA case.  To obtain discovery from an agency in an APA case, a party must "overcome the standard presumption that the agency properly designated the Administrative Record."  *Amfac Resorts, LLC v. U.S. Dept. of the Interior,* 143 F. Supp. 2d 7, 12 (D.D.C. 2001).  Because the parties generally do not engage in discovery in an APA case, the Defendants' motion for a more definite statement cannot be viewed as a substitute for discovery.

Each bond breach determination constitutes a separate claim and separate administrative decision because each has a unique set of facts.  To allow Defendants to fully respond to Plaintiffs'

allegations, the Plaintiffs must identify the specific bond breach determinations that they allege are unlawful so that Defendants may raise any applicable defenses.

## CONCLUSION

For the foregoing reasons, the United States respectfully asks this Court to grant its motion to dismiss Plaintiffs' defective NTA claim for lack of standing, to dismiss Plaintiffs Nexus and Donovan because they lack standing to challenge any breach determinations, and to require a more definite statement.


Dated: December 14, 2018          Respectfully submitted,

                                  JESSIE K. LIU
                                  UNITED STATES ATTORNEY
                                  D.C. BAR NUMBER 472845

                                  DANIEL F. VAN HORN, D.C. Bar No. 924092
                                  Chief, Civil Division


                                  _____/s/_____
                                  RHONDA L. CAMPBELL, D.C. Bar No. 462402
                                  Assistant United States Attorney
                                  Civil Division
                                  555 4th Street, N.W.
                                  Washington, D.C. 20530
                                  (202) 252-2559
                                  Rhonda.Campbell@usdoj.gov

                                  *Counsel for United States*