# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| STATEWIDE BONDING, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> Defendants. | Civil Action No. 18-2115 (JEB) |

## MEMORANDUM OPINION

At any given time, Immigration and Customs Enforcement — better known as ICE — detains about 50,000 people. Some have been arrested trying to enter the United States illegally, others for overstaying visas. All are alleged to lack legal authorization to live here. Depending on the circumstances of their detention, some of these persons may be released if they are able to post monetary bonds. Many cannot afford to secure bond on their own, however. Enter Plaintiffs — two bail-bond companies, a corporation involved in the immigration-bond process, and its CEO. They partner with government-certified sureties — effectively, insurance companies — to put up bonds for detained non-citizens in exchange for monthly payments.

In this suit, Plaintiffs claim that ICE is failing to meet its legal obligations with respect to these immigration bonds, leading many to be breached and harming their businesses. The Court dismissed their previous Complaint because they did not sufficiently allege that they had standing. See Statewide Bonding, Inc. v. U.S. Dep't of Homeland Security, 2019 WL 689987, at *1 (Feb. 19, 2019). Plaintiffs have filed an amended Complaint clarifying their injuries, and the Department of Homeland Security now again moves to dismiss, contending that this one suffers

1

from the same deficiencies as the last. While it maintains reservations about the legal basis for their suit, the Court finds that Plaintiffs have done enough to show they have standing to proceed past the pleading stage. It will therefore deny Defendants' Motion.

I.    **Background**

The Court reviewed the circumstances leading to this lawsuit in its previous Opinion. See Statewide Bonding, 2019 WL 689987, at *1–2. Its account was hampered, however, by the prior Complaint's failure to set out essential background information about the immigration-bond process and the parties' roles therein. Plaintiffs' newest Complaint, see ECF No. 32 (Second Amended Complaint), unfortunately, does little better. The Court thus held a hearing on May 28, 2019, which clarified some of the issues. Drawing on counsels' representations there, the Court will first explain the immigration-bond process and then sum up the course of this litigation.

   A.    Factual Background

As mentioned at the start, some non-citizens in immigration detention are eligible to be temporarily released until their court hearing if they post monetary bonds. Those who cannot post the entire amount on their own rely on a constellation of for-profit entities to obtain release. The first are sureties — insurance companies certified by the Department of Treasury to secure immigration bonds without paying the full amount of the bond in advance. See 8 C.F.R. § 103.6. Sureties partner with the second, more familiar, entity — the bail-bond company. See Second Amended Compl., ¶ 25. To obtain such a bond, the detained person would typically pay some percentage of the bond amount to the bail-bond company and put up substantial collateral. Id., ¶ 26. But many non-citizens are unable to obtain the necessary collateral and would typically be out of luck. Id. That is where the third company — Nexus Services, Inc. — comes in. Through

separate contractual arrangements with the surety, bail-bond company, and non-citizen, Nexus agrees to supply the collateral and guarantee that the non-citizen will appear when required by ICE. Id., ¶ 27.

With the key players outlined, the bond process can be explained simply. Soon after being arrested, a non-citizen receives a Notice to Appear. The NTA is a charging document informing her that ICE has placed her in removal proceedings and setting out the allegations supporting such removal; it is also supposed to contain the date, time, and place of her subsequent immigration hearing. Id., ¶¶ 31–36 (citing 8 U.S.C. § 1229). Around the same time, an ICE official will decide whether she qualifies for bond; if denied, she can appeal to an immigration judge. See 8 C.F.R. § 236.1(d). If either agrees that bond is appropriate, an amount will be set. With respect to the bonds at issue in this case, the non-citizen is unable to pay the amount herself and thus contacts Nexus for help. See Second Amended Compl., ¶¶ 26–27.

Nexus reaches a contractual agreement with the non-citizen by which it will secure her bond in exchange for monthly payments and GPS monitoring. Id., ¶ 27. To obtain bond on her behalf, Nexus will contact the bail-bond company and surety. (Because it is not a federally certified surety or a state-certified bail-bond company, Nexus cannot secure bonds on its own.) In exchange for its obtaining the immigration bond from DHS on behalf of the non-citizen, Nexus agrees to pay the surety and bail-bond company certain fees and guarantee the bond in case of a breach. If all goes well, these contractual arrangements allow the non-citizen to be released subject to the terms of the bond. Id., ¶¶ 24–30.

Once released, she is required to attend her immigration hearing at the time and date listed on the NTA. If she fails to do so or otherwise comply with the bond's terms, ICE will send the surety and bail-bond company — as the formal parties to the bond agreement — a Demand

Notice. This document, which Plaintiffs call a Notice to Produce Alien (NPA), requires the bail-bond company and surety to ensure the non-citizen's appearance at an ICE office on a specific date. Id., ¶¶ 47–51. If they do not do so, the bond will be deemed breached, and they must pay the bond amount (or some portion thereof) to ICE. Importantly, for the bonds at issue in this case, Nexus is contractually responsible both for procuring the non-citizen in response to an NPA and for reimbursing the bond company and surety for the amount due on any bond breaches. Id., ¶¶ 27, 57–59.

B. Procedural Background

With the terrain thus established, the Court will turn to the allegations in this case. Plaintiffs here are two bail-bond companies — Statewide Bonding, Inc. and Big Marco Insurance and Bonding Services, LLC — Nexus Services, Inc., and Nexus's CEO, Mike Donovan. Id., ¶¶ 14–17. (As it did the last time, unless distinguishing among Plaintiffs, the Court will refer to them collectively as Statewide.)

They filed their initial Complaint in September 2018, seeking declaratory, injunctive, and monetary relief for alleged violations of the Administrative Procedure Act and the Due Process Clause, and for breach of contract. See ECF No. 1. After the Court denied their request for a temporary restraining order and questioned the jurisdictional basis for their claim for monetary relief, Statewide filed an Amended Complaint seeking only declaratory and injunctive relief. See ECF No. 8. The Government responded with a Motion to Dismiss, asserting that Statewide did not have standing. See ECF No. 22 (First MTD). Because it could not "discern from the pleadings what precise practices Plaintiffs take issue with, what legal claims derive therefrom, and how these Plaintiffs are harmed," the Court agreed. Statewide Bonding, 2019 WL 689987, at *1. But it only dismissed the Complaint, rather than the entire case, acknowledging the

possibility that Plaintiffs could "through clearer allegations . . . demonstrate that subject-matter jurisdiction does exist here." Id.

In hopes that the third time is the charm, Statewide has filed a Second Amended Complaint. This one contains over a dozen additional paragraphs aiming to shed light on the harms Plaintiffs are suffering and the legal claims that would redress them. See Second Amended Compl., ¶¶ 57–82. The crux of their allegations is that ICE has a policy or practice of issuing deficient NTAs and NPAs in violation of the APA and the Due Process Clause. Id., ¶¶ 68–82. NTAs are deficient, Statewide claims, because they do not list the date, time, and place of the bonded person's hearing, making it impossible for her to know when and where she is supposed to appear. Id., ¶¶ 31–47. And NPAs are faulty because they do not provide Plaintiffs sufficient time — routinely less than ten days — to find the non-citizen by the date listed. Id., ¶¶ 48–55. Together, these deficiencies lead to more breached bonds, costing Plaintiffs money and harming their reputations.

DHS has filed another Motion to Dismiss, maintaining that the newest Complaint has the same jurisdictional defects as the last one. See ECF No. 35 (Second MTD). The Court held a hearing on May 28, 2019, and now issues this Opinion.

## II. Legal Standard

The Government has moved to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction. In considering the Motion, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted). The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor

5

an inference "unsupported by the facts set out in the complaint." Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (citations omitted).

To survive a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear its claims. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); US Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000). A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13–14 (quoting 5A Charles A. Wright & Arthur R. Miller, Fed. Practice & Procedure § 1350 (2d ed. 1987)) (alteration in original).

**III.     Analysis**

Article III of the United States Constitution limits the jurisdiction of federal courts to resolving "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. A party's standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." Defenders of Wildlife, 504 U.S. at 560. To demonstrate standing, a plaintiff must show that it has satisfied the following criteria. First, it "must have suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." Id. (citations and internal quotation marks omitted). Second, "there must be a causal connection between the injury and the conduct complained of — the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." Id. (alterations in original) (citation and internal quotation marks omitted). Third, "it must be 'likely,' as opposed to merely

'speculative,' that the injury will be 'redressed by a favorable decision.'" Id. at 561 (citation omitted). A "deficiency on any one of the three prongs suffices to defeat standing." US Ecology, 231 F.3d at 24.

Defendants object to Plaintiffs' standing on largely the same grounds that they did before, contending that Statewide has not established any of the three requirements. DHS takes issue, in particular, with the specificity of the injury and causation allegations, the coherence of Plaintiffs' claims as they bear on redressability, and the basis for Nexus's and Donovan's standing since they are not parties to the bond agreements. The Court will address each in turn.

A. Injury in Fact

As in their prior Complaint, Plaintiffs assert that they have suffered both economic and reputational injuries. See Second Amended Compl., ¶¶ 57–67. The Court previously found that their allegations were "insufficiently specific about the nature of the harms" and how they would suffer them. Statewide Bonding, 2019 WL 689987, at *3. The question is whether their newest Complaint resolves these concerns. The Court finds that it does.

Statewide now makes a concrete allegation of past economic harm: "Plaintiffs have over 391 individual bonds that have been declared in breach as a result of the Defendants' course of conduct," requiring them "to pay tens of thousands of dollars to the Defendants." Second Amended Compl., ¶¶ 59–60. They further allege that because the Government's policy or practice is ongoing, they will suffer similar economic harms in the future. Id., ¶¶ 60, 67, 69, 74, 79. This is sufficient. Accepting as true "the factual allegations in the complaint," Statewide has established "a risk of future injury that is substantial enough to create Article III standing." Attias v. Carefirst, Inc., 865 F.3d 620, 626–27 (D.C. Cir. 2017).

The Government sees matters differently, asserting that Plaintiffs' injury allegations fall short for several reasons. First and foremost, it contends that the allegations are vague and conclusory. DHS points out that Statewide does not "identify any particular bond breach," "accurately state the actual amount due on the breached bonds," "state whether payment was submitted to DHS for these breached bonds," or "identify the party that made payment to DHS on the breached bonds." See Second MTD at 7, 11–12. To be sure, the Complaint — particularly given that it is Plaintiffs' third — should have included these details. But their absence is not fatal. For starters, the Government concedes that several hundred bonds have indeed been breached and that some of these have been paid by Plaintiffs. Id. at 11 n.3; see also 5/28/2019 MTD Hearing. DHS maintains that this is insufficient because it is unclear which Plaintiff made the payments. See Second MTD at 11–12. Because only one needs standing to pursue a claim for injunctive or declaratory relief, Comcast Corp. v. FCC, 579 F.3d 1, 6 (D.C. Cir. 2009), however, it is not necessary to ascertain which among several plaintiffs has suffered an injury (and has met the other standing requirements) as long as one of them has. See In re Navy Chaplaincy, 697 F.3d 1171, 1176–1178 (D.C. Cir. 2012) (concluding that plaintiffs had standing because "at least some plaintiffs" would suffer injury). In any event, Plaintiffs allege that Nexus has indemnified the bail-bond companies and sureties for any payments due the Government in the event of a breach. See Second Amended Compl., ¶¶ 57, 59. At the least, Nexus thus suffers harm from the bond breaches.

For similar reasons, Statewide is not required for standing purposes to identify specific bond breaches or the amounts paid on them. Plaintiffs have plausibly alleged, and the Government has conceded, that bonds have been breached and money paid to DHS as a result. That is enough to demonstrate economic injury. Requiring more would be inconsistent with the

D.C. Circuit's admonition that, at the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, and the court presumes that general allegations embrace the specific facts that are necessary to support the claim." Renal Physicians Ass'n v. U.S. Dep't of Health & Human Servs., 489 F.3d 1267, 1273 (D.C. Cir. 2007) (internal quotation marks and citation omitted).

DHS's remaining objections to Statewide's allegations of injury are weaker and thus merit less ink. With respect to the 391 prior bond breaches Plaintiffs cite as evidence of economic injury, Defendants state that "all but [seven] . . . have been paid and thus this Court would not have jurisdiction over Plaintiffs' claims to recover these payments from the United States." Second MTD at 11 n.3. This is a non-sequitur. Here, Statewide does not seek to recover these past bond-breach payments; the 391 prior breaches are relevant merely to establish that Plaintiffs have suffered harms from an ongoing DHS policy or practice and that these harms are likely to continue in the future. The Government separately suggests that two of the 391 breaches have been rescinded and 37 did not involve the bail-bond companies that are Plaintiffs in this case. Id. Assuming that this is the case, it does not diminish the fact that over 300 bonds issued or guaranteed by Plaintiffs were breached and paid to DHS. Finally, DHS takes issue with Statewide's allegations that they have suffered reputational harms. Id. at 9–10. Since the Court is not relying on reputational injury as the basis for Plaintiffs' standing, any uncertainty with respect to that form of damage is immaterial.

B. Causation

Next up is causation. To refresh the reader, this prong requires the plaintiff to show that her injuries are "fairly traceable" to the allegedly unlawful conduct. See Defenders of Wildlife, 504 U.S. at 560. Last time around, the Court concluded that Statewide had not established

9

causation because the First Amended Complaint never provided clarity on the nature of their claims, particularly the conduct about which they complained. It was unclear, for example, whether they were challenging DHS's deficient NTAs and NPAs as part of one policy or practice or as two different policies, or if they were challenging individual bond-breach determinations. See Statewide Bonding, 2019 WL 689987, at *5. The Second Amended Complaint now alleges the first of those: that DHS has one continuous policy or practice that violates the law. See Second Amended Compl., ¶¶ 69, 74, 79. All that is required for purpose of causation, accordingly, is for Statewide plausibly to allege that this single policy, taken as a whole, is responsible for their injuries. They have done so. Plaintiffs now claim that Defendants have a policy or practice of "(1) issuing an NTA that violated federal law by not having a specific time, date, and place regarding immigrant court appearance coupled with (2) providing an NPA permitting an inadequate amount of time for the Plaintiffs to produce an alien." Id., ¶ 74. This policy, they say, leads to bonds being breached, causing the economic injuries discussed above. Id., ¶ 79. With respect to the NPA slice, they claim that "Plaintiffs receive the notice to produce within 10 days of the specific time and location," which is insufficient and unreasonable under the APA and the Due Process Clause. Id., ¶¶ 51–52. Based on these allegations, the Court is persuaded that Statewide has sufficiently alleged that deficiencies in the NPAs make it more likely that bonds they have guaranteed will be breached, thereby causing them harm.

The Government does not take issue with the logic of Plaintiffs' causation allegations, at least with respect to the NPAs. It does not contest, in other words, that if Statewide were to receive an NPA with very little time to procure the bonded person's appearance, that would make it more likely for the bond to be breached. See Second MTD at 14–15; see also 5/28/2019 MTD Hearing. DHS instead disputes whether Statewide's allegations are sufficiently concrete,

10

asserting that they must provide an example of a deficient NPA. See Second MTD at 14. While it would prefer the kind of detail Defendants seek, the Court "presumes that general allegations embrace the specific facts that are necessary to support the claim." Renal Physicians, 489 F.3d at 1273 (citation omitted). Plaintiffs' allegation that they are given less than 10 days' notice to procure a non-citizen's appearance is thus sufficient for standing purposes.

Changing tack, DHS disputes whether the causation allegations are accurate. At the hearing on the Motion to Dismiss, for example, the Government asserted that at least one of the NPAs that Statewide alleges gave them less than 10 days' notice in fact gave them closer to 30 days. See 5/28/2019 Hearing on MTD. This argument overlooks that at this stage of the proceedings, the Court must "take the complaint's allegations 'of facts, historical or otherwise demonstrable,' as true." Arpaio v. Obama, 797 F.3d 11, 21 (D.C. Cir. 2015) (quoting United Transp. Union v. ICC, 891 F.2d 908, 912 (D.C. Cir. 1989)). Further down the road, Plaintiffs will be required to submit evidence backing up their allegations; the Government, in turn, will have the opportunity to offer contradictory evidence. If Statewide cannot produce evidence that the Government has the alleged policy, it will presumably lose on the merits.

C. Redressability

The redressability prong, the reader will recall, is met if it is "likely" that a favorable judicial decision will redress Plaintiffs' injuries. In its prior Opinion, the Court could not determine whether this requirement was met because, among other reasons, the Complaint did not make clear the "bounds of the claims." Statewide Bonding, 2019 WL 689987, at *6. Statewide has now clarified, as discussed above, that it challenges DHS's single policy or practice of issuing defective NTAs and NPAs. See Second Amended Compl., ¶¶ 69, 74, 79. If the Court were to agree that DHS has an unlawful policy along the lines Plaintiffs' allege, it

could issue a decision invalidating that policy. In such event, no further bonds would be breached on account of the alleged deficiencies, redressing Statewide's injuries. The third standing prong is thus met.

DHS's contentions to the contrary go to the merits of Plaintiffs' suit, not whether their injuries can be redressed. It may well be, as Defendants say, that "Plaintiffs have not established that they have been deprived of a protected interest" under the Due Process Clause. See Second MTD at 16. And their policy-or-practice claim may ultimately fail because there is insufficient evidence that the alleged policy exists. Id. But neither of those concerns goes to standing, and Defendants have not filed a motion to dismiss for failure to state a claim. See Estate of Boyland v. U.S. Dep't of Agric., 913 F.3d 117, 123 (D.C. Cir. 2019) ("[W]hen considering whether a plaintiff has Article III standing, a federal court must assume, *arguendo*, the merits of his or her legal claim.") (citation omitted).

The Government makes one last point worthy of discussion here. It says that this Court may only review specific bond-breach determinations; as Statewide has identified no breaches that it is challenging in this suit, however, it is impossible both for Defendants to assemble the administrative record required for such review and for the Court to issue an order redressing any injuries. See Second MTD at 16. This argument misses the fact that the crux of Plaintiffs' Complaint is not past bond breaches but <u>future</u> ones. To the extent Defendants think no such future-directed policy-or-practice claim is available in this context, that argument also goes to the merits rather than to redressability. Id.

DHS may ultimately have good arguments why Statewide's claims should not go forward. At the Motion-to-Dismiss hearing, Plaintiffs conceded that the core of their APA claim is that they have been deprived of due process under the Constitution, suggesting that their legal

claims may all collapse into due process. To this point, however, they have not offered clear allegations concerning what protected interest the Government deprives them of and why the process available to them — including administrative review and suit for breach of contract — is insufficient. See, e.g., New Vision Photog. Prog., Inc. v. District of Columbia, 54 F. Supp. 3d 12, 29–32 (D.D.C. 2014); Jones & Assocs., Inc. v. District of Columbia, 797 F. Supp. 2d 129, 136 (D.D.C. 2011). As Defendants did not move for dismissal under Rule 12(b)(6), those arguments will have to await a motion for judgment on the pleadings or one for summary judgment.

### D. Nexus and Mike Donovan

Defendants make one last Rule 12(b)(1) objection: they say that Nexus and Mike Donovan lack standing because they are not parties to any of the bond agreements nor are they third-party beneficiaries of those agreements. See Second MTD at 18. (Recall that the surety and bail-bond company secure the bond, while Nexus maintains separate contractual arrangements with them and the non-citizen.) This objection is easily dispatched. Plaintiffs do not bring a breach-of-contract suit; they are not seeking to enforce the terms of any bond agreement. Under such circumstances, the absence of a contractual relationship between Nexus and the Government is irrelevant. Nexus has plausibly alleged that it suffers harm on account of the Government's unlawful policy and that a decision of this Court could redress such harm. That is all that is required.

## IV. Conclusion

For the reasons stated, the Court will deny Defendants' Motion to Dismiss for lack of subject-matter jurisdiction. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: June 13, 2019