UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STATEWIDE BONDING, INC, *et al.*,

    Plaintiffs,

    v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al.*,

    Defendants.

Civil Action No. 18-2115 (JEB)

## MEMORANDUM OPINION

The Court once again addresses a dispute between various private actors in the immigration-bond process and the federal officials responsible for oversight. Plaintiffs — two bail-bond companies, a separate corporation guaranteeing the detainees' compliance with the bonds, and that company's CEO — assert that the Government's current administration of the system violates their right to due process guaranteed by the United States Constitution, as well as the Administrative Procedure Act. In support of these claims, they point to defective documentation provided by Immigration and Customs Enforcement to non-citizens released on bail. When these individuals fail to appear at court hearings, the bonds are breached, causing significant damage to Plaintiffs' business interests. While Plaintiffs may be justifiably concerned, they have not pled cognizable causes of action here, despite this Court's providing them multiple opportunities to do so. It will therefore grant Defendants' Motion for Judgment on the Pleadings.

**I.     Background**

   A.   Factual Background

The Court has outlined the factual underpinning of this lawsuit in multiple prior Opinions. See, e.g., Statewide Bonding v. DHS (Statewide II), 2019 WL 2477407, at *1–2 (D.D.C. June 13, 2019). Briefly, some non-citizens held in immigration-detention facilities may be released while they await a hearing if they can post a monetary bond. See 8 C.F.R. §§ 236.1(c), 103.6. Those unable to post their own bonds can turn to bail-bond companies such as Plaintiffs Big Marco Insurance and Bonding Services, LLC and Statewide Bonding, Inc. See ECF No. 32 (Second Amended Complaint), ¶ 24. These companies partner with sureties (insurance companies certified by the Department of Treasury) to enter into bond agreements with ICE. Id. The agreements secure bonds on behalf of non-citizens, and the companies generally require bond seekers to provide collateral as security in the event of their failure to appear. Id., ¶¶ 16, 25. If the non-citizen does not have sufficient collateral on hand, he can strike up an arrangement with a third company, such as Plaintiff Nexus Services, Inc. Id., ¶ 16. Nexus enters into separate contractual arrangements with the bail-bond companies to supply collateral and guarantee a non-citizen's appearance when required by ICE. Id., ¶¶ 27, 30. In exchange, the non-citizen provides monthly payments to Nexus and agrees to GPS monitoring. Id., ¶¶ 26–27.

This case arises from alleged flaws in the various documents given to non-citizens and this tangle of private entities to ensure the released person's attendance at immigration proceedings. According to Plaintiffs, at his conditional release, a non-citizen receives a Notice to Appear (NTA). Id., ¶ 31. The NTA informs him that he has been placed in removal proceedings, sets out the allegations supporting removal, and should alert him of the date, time,

2

and place of his immigration hearing.  Id., ¶¶ 35–36; see also Pereira v. Sessions, 138 S. Ct. 2105, 2115 (2018) ("Conveying . . . time-and-place information to a noncitizen is an essential function of a notice to appear.").  According to Plaintiffs, however, ICE consistently issues NTAs to their clients that "do not contain a time and date, and the majority do not contain a place, with respect to where the immigrant client is supposed to appear in court."  Second Am. Compl., ¶ 38.

If the non-citizen does not appear for his hearing, ICE will send the bail-bond company the second document at issue, a Notice to Produce Alien (NPA).  Id., ¶¶ 48–49.  The NPA alerts the company of the non-citizen's failure to appear and requires it to procure that person's appearance on a specific date.  Id.  If it fails to do so, the bond obligors will be deemed in breach of the bond and required to pay an amount up to the full value of the bond.  See Statewide II, 2019 WL 2477407, at *2; see also 8 C.F.R. § 103.6 (bond is breached "when there has been a substantial violation of the stipulated conditions" of bond agreement).  Plaintiffs allege that ICE has been issuing NPAs demanding that they produce the subject immigrant within 10 days and sometimes on an even tighter timeline.  See Second Am. Compl., ¶ 51; see also id. (noting that "[o]n more than one occasion, these NPAs have been received after the subject immigrant was to be produced").  Such practices make it even harder for Plaintiffs to comply and result in an increased number of bond breaches.  Id., ¶¶ 52–59.

B.  Procedural History

Plaintiffs filed their Complaint in September 2018, asserting that Defendants' administration of this bond process violated both their due-process rights protected by the United States Constitution and the Administrative Procedure Act.  After Plaintiffs once amended their Complaint, the Court dismissed it because they had not sufficiently articulated their standing to

3

pursue such claims. See Statewide Bonding, Inc. v. DHS, 2019 WL 689987, at *1 (D.D.C. Feb. 19, 2019) (Statewide I). Accepting the Court's offer to try again, Plaintiffs have once more amended their Complaint, this time to clarify their injuries.

Like the previous one, this Second Amended Complaint asserts that the agency's policy or practice of making bond-breach determinations following the issuance of defective NTAs and NPAs violates Plaintiffs' due-process rights and the Administrative Procedure Act. More specifically, they allege that the "defective" NTAs and NPAs preclude non-citizens from attending their immigration hearings and the bail-bond companies from procuring their appearances at subsequent proceedings. See Second Am. Compl., ¶¶ 1, 10. Plaintiffs have "no reasonable opportunity to comply" with the terms of the bonds, and Defendants then "declare the bonds in breach[,] . . . requir[ing Plaintiffs] to pay tens of thousands of dollars to the Defendants." Id., ¶ 59. A breach declaration, in turn, "threaten[s]" the "[c]ollateral that Nexus has placed at risk to indemnify the bondsmen." Id., ¶ 60. Plaintiffs allege that along with these financial harms, ICE's conduct also causes them "reputational harms for every bond declared in breach." Id., ¶ 65. This is so, they claim, because surety companies do not want to partner with bail-bond companies with high bond "fail rates." Id., ¶ 59. Plaintiffs assert that ICE has declared 391 bond agreements in breach, to all of which at least one of them is a party. Id., ¶ 60.

Defendants moved to dismiss this Second Amended Complaint, arguing that Plaintiffs had again failed to demonstrate standing. The Court denied that Motion. See Statewide Bonding II, 2019 WL 2477407, at *1. While expressing "reservations about the legal basis for the[ ] suit," it found that Plaintiffs had at least "done enough to show they have standing to proceed." Id. Defendants now take up the Court's implicit invitation to go beyond jurisdictional

4

arguments, moving for judgment on the pleadings. In support of their Motion, they argue that, even under the facts as pled, Plaintiffs cannot prevail on their claims as a matter of law.

## II.     Legal Standard

Federal Rule of Civil Procedure 12(c) authorizes a party to move for judgment on the pleadings at any time "[a]fter the pleadings are closed — but early enough not to delay trial." A party seeking judgment on the pleadings must demonstrate "that no material fact is in dispute and that it is entitled to judgment as a matter of law." Dist. No. 1 v. Liberty Maritime Corp., 933 F.3d 751, 760 (D.C. Cir. 2019) (quotation marks omitted). When deciding such a motion, courts should view all facts and draw all inferences in the light most favorable to the non-moving party. See Peters v. Nat'l R.R. Passenger Corp., 966 F.2d 1483, 1485 (D.C. Cir. 1992). A court should grant a motion for judgment on the pleadings when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Lindsey v. Dist. of Columbia, 609 F. Supp. 2d 71, 77 (D.D.C. 2009). The appropriate standard for reviewing a 12(c) motion is therefore similar but not identical to that applied to a motion to dismiss under Rule 12(b). See Samuels v. Safeway, Inc., 391 F. Supp. 3d 1, 2 (D.D.C. 2019). In particular, "while a Rule 12(b) motion may be based on procedural failures, including lack of subject-matter jurisdiction . . . a Rule 12(c) motion centers upon the substantive merits of the parties' dispute." Id. (quotation marks omitted).

Where the Court must consider "matters outside the pleadings" to reach its conclusion, a motion for judgment on the pleadings "must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); see also Yates v. Dist. of Columbia, 324 F.3d 724, 725 (D.C. Cir. 2003) (same). At this stage, however, a Court can review "documents attached as exhibits or incorporated by reference in the complaint" or "documents upon which the plaintiff's complaint

necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant." Ward v. D.C. Dep't of Youth Rehab. Servs., 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal quotation marks omitted); see also Banneker Ventures, LLC v. Graham, 798 F.3d 1119, 1133 (D.C. Cir. 2015) ("A district court may consider a document that a complaint specifically references without converting the motion into one for summary judgment."). As Defendants' declaration merely spells out procedural steps that Plaintiffs do not dispute, the Court may consider it in this 12(c) Motion.

### III. Analysis

Defendants principally maintain that Plaintiffs have not alleged a valid claim under the Due Process Clause because they have no constitutionally protected property interest in the immigration bonds, and even if they did, the Government's procedures are sufficient. Defendants also assert that Plaintiffs' APA claim founders for at least those same reasons. The Court considers the counts in turn.

#### A. Due Process

The Fifth Amendment's Due Process Clause prohibits the federal government from depriving persons of "property" "without due process of law." In examining a claim asserting a denial of due process, courts "apply a familiar two-part inquiry: we determine whether the plaintiffs were deprived of a protected interest, and, if so, whether they received the process they were due." Barkley v. U.S. Marshals Serv. ex rel. Hylton, 766 F.3d 25, 31 (D.C. Cir. 2014) (internal quotation marks omitted). As mentioned above, Defendants contest Plaintiffs' claim at both steps. The Court concludes that, even assuming the bond agreements give rise to a constitutionally protected interest, Plaintiffs have failed to establish that the Government has deprived them of the process "due" under the Fifth Amendment. See Lujan v. G & G Fire

Sprinklers, Inc., 532 U.S. 189, 196–97 (2001) (declining to address whether Plaintiff had alleged constitutionally protected interest because its interests were "fully protected"); Barkley, 766 F.3d at 31 (same).

At the start, there is no one-size-fits-all procedure the Government should employ to protect against the unconstitutional deprivation of property. Rather, "due process is flexible and calls for such procedural protections as the particular situation demands." NB *ex rel.* Peacock v. Dist. of Columbia, 794 F.3d 31, 44 (D.C. Cir. 2015) (quoting Mathews v. Eldridge, 424 U.S. 319, 334 (1976)). A plaintiff "is not entitled to perfect procedure or the procedures of his choice." English v. Dist. of Columbia, 815 F. Supp. 2d 254, 264 (D.D.C. 2011) (quotation marks omitted). Instead, "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews, 424 U.S. at 333 (quotation marks omitted). In assessing the adequacy of a plaintiff's "opportunity to be heard," courts employ the familiar three-factor test set forth in Mathews considering:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. at 335. This Opinion will first set forth the process currently afforded private actors like Plaintiffs and then examine whether this is sufficient under Mathews.

1. *The Available Process*

The Court begins with "a description of the procedures" surrounding bond-breach determinations. Id. When DHS determines that a bond breach has occurred, there is no automatic forfeiture of Plaintiffs' property — *i.e.*, the money represented by the bonds

7

themselves. Instead, "[i]f DHS determines that a bond has been breached, it will notify the obligor of the decision, the reasons therefor, and inform the obligor of the right to appeal the decision in accordance with the [relevant regulations]." 8 C.F.R. § 103.6. DHS fulfills this obligation in multiple ways. For one, once a breach determination has been made, DHS must "send notice of a breach of the bond to the obligor" on a Form I-323, which also alerts them of their right to administrative appeal. See ECF No. 7 (Def. Opp. to TRO), Exh. A (ICE Form I-352) at 2. (DHS also alerts obligors at the outset, via the bond agreement itself, that they will have the opportunity to pursue an administrative appeal should they be found in breach of that bond. Id.) During that administrative process, obligors are guaranteed independent review, can submit briefs and evidence, and may avail themselves of counsel. See U.S. Citizenship and Immigration Services, Administrative Appeals Office Practice Manual §§ 3.6–3.8; see also 8 C.F.R. § 103.3 (outlining administrative-appeals system). The AAO can afford challengers the opportunity for oral argument "if the case involves an issue of particular significance and the AAO determines that it would benefit from supplemental argument." Id., § 3.8(f). Additionally, after the AAO issues its decision, the appealing party can file a motion for reconsideration, which also may include oral argument. Id., § 4.10.

Upon making a breach determination, DHS also "issues an invoice" to each of the co-obligors on a bond "to notify the entity that owes a debt of the amount due along with other information about the debt." Def. Opp., Exh. 2 (Declaration of John Monette), ¶ 6. This invoice informs the obligor that it has the right to "dispute the validity of the debt" through a written request submitted within thirty days of the receipt of the invoice. Id., Exh. A (invoice) at 4. If a timely written request is received, the "debt will be reviewed and collection will cease on the debt" until "a written summary of the review is provided." Id. This pre-deprivation review may

8

result in a finding that the debt is invalid in its entirety, partially invalid, or valid. If the invoice is not then timely paid, the agency sends a "demand letter," which explains "why the debt is owed," along with supporting documentation "substantiating the validity of the breach determination." Monette Decl., ¶ 8. "ICE typically refers delinquent debt to Treasury" after 120 days. Id., ¶¶ 10–11.

Finally, because DHS regulations do not require exhaustion of administrative remedies, a bond obligor can skip the administrative and written-appeal processes by immediately filing suit in federal court. In fact, some bond obligors and the Government (when seeking to collect on breached bonds) have done just that, asserting what are essentially breach-of-contract claims in federal district courts across the country. See, e.g., United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc., 728 F. Supp. 2d 1077, 1080 (N.D. Cal. 2010) (suit brought by United States against bail-bond company to recover bond amounts where company counterclaimed bonds were invalid because of failure to issue timely delivery demand); Safety Nat'l Cas. Corp. v. DHS, 711 F. Supp. 2d 697, 700–01 (S.D. Tex. 2008) (suit involving surety company's challenge to 1400 immigration-bond-breach determinations); see also AAA Bonding Agency, Inc v. DHS, 447 F. App'x 603, 610 (5th Cir. 2011) (referring to immigration bond as "contract" between co-obligors and DHS and analyzing it according to ordinary principles of contract interpretation).

Finally, the Court notes that Plaintiffs Nexus and Mike Donovan (Nexus's CEO) "have no contractual relationship with ICE with respect to immigration bonds." Def Opp., Exh. 1 (Declaration of Justin Gellert), ¶ 5. Their more attenuated relationship to these bond-breach determinations may result in a loss of property, but it is not a loss occurring "at the hands of the government." NB, 794 F.3d at 42; see also id. ("[D]ue process offers no shield against purely

9

private conduct."). The Court has therefore focused its analysis on the procedural protections afforded the bond obligors *vis-à-vis* the Government.

2. *Constitutional Adequacy*

Plaintiffs have failed to demonstrate the inadequacy of the above-chronicled smorgasbord of procedural safeguards. Under the Mathews test, even assuming they have a substantial private interest at stake here, they have not established a "risk of an erroneous deprivation" of property. See 424 U.S. at 335. While Plaintiffs articulate deficiencies in the NPAs and NTAs, these documents alone do not deprive any of them of their property until a final breach determination has been made. And the Government then provides multiple means of contesting such breach determinations.

Courts have found that where a due-process property interest derives from contract, this interest "can be fully protected by an ordinary breach-of-contract suit." LG Elecs. U.S.A., Inc. v. Dep't of Energy, 679 F. Supp. 2d 18, 34 (D.D.C. 2010) (quoting Lujan, 532 U.S. at 196). In other words, Plaintiffs' contract remedy alone may provide constitutionally adequate protection given that "the process to which [a] plaintiff is due" where he challenges the Government's performance under a contract, like a bail-bond agreement, "is a post-deprivation suit for breach of the contract." Id. (quotation marks omitted); see also Suburban Mortg. Assocs., Inc. v. HUD, 480 F.3d 1116, 1128 (Fed. Cir. 2007) ("[A] claim that a government agency has violated a party's right to due process by refusing performance under a contract is substantively indistinguishable from a breach of contract claim.").

Yet, as mentioned above, Plaintiffs are not limited to a breach-of-contract suit in their pursuit of relief; they have a panoply of appellate options. With regard to the administrative-appeal process, Plaintiffs are guaranteed a neutral adjudicator, see Del. Riverkeeper Network v.

FERC, 895 F.3d 102, 111 (D.C. Cir. 2018) ("Due Process requires an 'impartial and disinterested' adjudicator.") (quoting Marshall v. Jericho, Inc., 446 U.S. 238, 242 (1980)), as well as multiple levels of review. Attesting to the sufficiency of this process, Statewide and Big Marco have filed "hundreds of timely appeals with the AAO challenging ICE's breach determinations," and they have enjoyed some success. See ECF No. 40 (Def. Reply) at 6 n.3; see also id. (noting that AAO has issued multiple decisions in favor of obligors on the ground that NPAs were fatally defective). Given these possible avenues of relief, Plaintiffs have not demonstrated that "the available process was inadequate or that they were denied the aforementioned protections." Badgett v. Dist. of Columbia, 925 F. Supp. 2d 23, 31 (D.D.C. 2013).

In addition, "a procedural due process claim requires the plaintiff to identify the process that is due." Doe by Fein v. Dist. of Columbia, 93 F.3d 861, 870 (D.C. Cir. 1996). Yet Plaintiffs here do not even suggest plausible alternative procedural safeguards that they would find constitutionally adequate. It appears that what they are really unhappy about is that their late appeals may not be accepted. Indeed, they argue that the "administrative option" is insufficient because "breach determinations are final, so long as no appeal has been filed and accepted by the AAO," and the AAO is required by the relevant regulations to reject "untimely appeal[s]." ECF No. 48 (Pl. Response) at 5; see also 8 C.F.R. §§ 103.5, 103.3(a)(2)(i) (outlining that obligor has 30 days to file an administrative appeal or motion for reconsideration of breach determination). In other words, Plaintiffs seem to argue for a "process" devoid of any deadlines because they have missed the deadline for challenging some of ICE's breach determinations. Due Process, however, does not require an agency to permit never-ending opportunities to appeal. In this case, Plaintiffs simply "failed to take advantage of all the process due [to them]." Yates, 324 F.3d at

11

726.  Their procedural-due-process claims accordingly "cannot survive where Plaintiffs themselves eschewed the opportunity to exploit the very procedural safeguards which they argue they were denied."  Badgett, 925 F. Supp. 2d at 31.

As this Court recently observed in a companion case, Plaintiffs "have received more process than other plaintiffs who likewise were not able to state a due-process claim."  Statewide Bonding, Inc. v. DHS, 2019 WL 2076762, at *3 (D.D.C. May 10, 2019) (citing Graham v. Office of Surface Mining Reclamation & Enforcement, 722 F.2d 1106, 1110–12 (3d Cir. 1983) (holding scheme requiring payment of penalty into escrow before administrative appeal comported with procedural-due-process requirements); Dewees v. United States, 272 F. Supp. 3d 96, 101 (D.D.C. 2017) (holding plaintiff had not stated procedural-due-process claim where he had "no opportunity to appeal his [tax] penalty through administrative means or the U.S. Tax Court before it was collected" because he could challenge in district court after penalty was assessed)).  The Government, in short, has not "deprive[d them] of the only process due," Tate v. Dist. of Columbia, 627 F.3d 904, 908 (D.C. Cir. 2010), and it is therefore entitled to judgment as a matter of law on Plaintiffs' constitutional claims.

B.  Administrative Procedure Act

Plaintiffs also bring suit under the APA.  They assert in their Complaint that ICE's issuance of flawed NTAs and NPAs violates that Act because it is "unlawful, unconstitutional, in excess of authority, and an abuse of authority, inter alia, under the APA."  Second Am. Compl., ¶ 69.  As the Court previously mentioned, it appears that the "core of their APA claim[s] is that they have been deprived of due process under the Constitution."  Statewide Bonding II, 2019 WL 2477407, at *6.  Plaintiffs conceded as much at oral argument, "suggesting that their legal claims may all collapse into due process."  Id.  They reiterated this claim in their written

submissions, arguing that they "have stated a claim for Due Process violations sufficient to state a claim under the APA."  Pl. Resp. at 8.  As Plaintiffs have not delineated an independent basis for these counts, their APA claims rise, and in this case fall, with their constitutional claims. Defendants are therefore entitled to judgment in their favor.

## IV.    Conclusion

For these reasons, the Court will grant Defendants' Motion for Judgment on the Pleadings.  Though Plaintiffs have failed to plead a cognizable claim, the Court does not foreclose the possibility that they may be able to do so in the future.  The case is therefore dismissed without prejudice.  A separate Order so stating will issue this day.


/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  October 29, 2019